# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 02-1602, 02-1650, 02-1914 & 02-2053

UNITED STATES OF AMERICA,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

JEROME GENOVA, LAWRENCE GULOTTA,
AND JEROME STACK,

*Defendants-Appellants, Cross-Appellees.*

———————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 CR 585—**Ruben Castillo**, Judge.

———————

ARGUED APRIL 11, 2003—DECIDED JUNE 20, 2003

———————

Before EASTERBROOK, MANION, and DIANE P. WOOD,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge.* After his election in 1993 as Mayor of Calumet City, Illinois, Jerome Genova appointed Lawrence Gulotta as City Prosecutor and arranged for his law firm, Gulotta & Kawanna, to get the lion's share of the City's legal business. Both a jury (with respect to Genova) and the judge (with respect to Gulotta, who elected a bench trial) concluded that Genova had a financial reason for this decision: Gulotta kicked back to Genova about 30% of all payments his firm received from the City. *United*

*States v. Genova*, 167 F. Supp. 2d 1021 (N.D. Ill. 2001). Genova diverted public resources to private ends in at least one other way: He induced Jerome Stack, the Public Works Commissioner, to make employees available for political duties. Stack gave employees leave (to provide the cover story that they were doing politics on their own) while providing each with a day of "comp time" for every day of political work. For some tasks, such as attending fundraisers, Stack gave the employees overtime credit, which immediately padded their paychecks—and always in an amount enough to cover the cost of tickets that the employees had purchased for themselves and their families.

For these machinations, Genova, Gulotta, and Stack have been convicted of violating the Racketeer Influenced and Corrupt Organizations Act (RICO); they operated the City (an "enterprise") through a pattern of racketeering (the predicate offenses are bribery and mail fraud). Gulotta was convicted of bribing Genova, Genova and Gulotta were convicted of mail fraud, and all three defendants were convicted of stealing more than $5,000 from a program (the City) that receives more than $10,000 annually in federal funds. The district court set aside Stack's theft convictions and several predicate acts underlying Genova's RICO conviction but rejected other challenges. *United States v. Genova*, 187 F. Supp. 2d 1015 (N.D. Ill. 2002). Genova has been sentenced to 60 months' imprisonment plus a fine of $12,500 and forfeiture of $386,276; Gulotta to 48 months plus a fine of $15,000 and forfeiture of $270,944; and Stack to 37 months plus a fine of $3,000. Gulotta has been disbarred and Genova suspended by Illinois pending disbarment. But Ronald Kawanna, Jr., Gulotta's former partner, remains in good standing at the Illinois bar even though the district court, after finding that Kawanna committed extensive perjury in the federal trial, strongly recommended that Illinois terminate his right to practice law. See 167 F. Supp. at 1043-45.

Genova and Gulotta challenge their convictions under 18 U.S.C. §666 for theft, and the United States has filed a cross-appeal seeking to have Stack's theft convictions reinstated.

Comp time is equivalent to money because it works like vacation leave: the employee can use it to receive pay for days on which no work is performed, and unused comp time (like unused vacation leave) may be converted directly to cash on resignation. Defendants contend that comp time represents a loss to the City only when drawn down (or cashed out) by an employee, and that the evidence does not show that more than $5,000 worth of comp time was *used* (as opposed to credited) in any given year. But this is like arguing that money placed in an employee's bank account does not count for purposes of §666 until the employee makes a withdrawal. To the contrary, money deposited in a bank, or comp time in an employment account, is value transferred to the employee when deposited, not when used, and the evidence was more than sufficient to show that Calumet City deposited more than $5,000 of comp time in employees' accounts, because of their political services, in each of 1996 and 1997. Genova's §666 convictions based on the use of public money for political activities is unexceptionable. And even if some leave remained unused and was canceled when the scheme came to light, the recovery of stolen funds does not make the original deed less a theft.

Some of Genova's (and all of Gulotta's) §666 convictions stem from funds paid to Gulotta & Kawanna and then kicked back to Genova. With respect to these, defendants contend, Genova did not receive more than $5,000 that was "owned by" or "under the care, custody, or control of" Calumet City, as §666 requires—because the money belonged to Gulotta & Kawanna. This argument supposes that a thief gets good title to the boodle. Genova and

Gulotta corruptly arranged for Gulotta & Kawanna to receive some of Calumet City's money, so that the law firm could pass a portion of it back to Genova. The roundabout does not disguise the fact that Gulotta & Kawanna never earned the amount that was destined to be handed over to Genova as a kickback; Genova just arranged to pilfer that money through an intermediary, and both participants were properly convicted. (We take up later the question whether Gulotta must disgorge the portion of the money that compensated his firm for legal services actually rendered.)

The jury convicted Stack of two counts under §666, one for funds misapplied in 1996 and the other for funds diverted in 1997. The district judge granted Stack's postverdict motion for acquittal under Fed. R. Crim. P. 29(c), observing that the verdicts with respect to §666 conflict with the verdict on the RICO charge. In order to convict Stack of violating RICO, the jury had to determine that he carried out a pattern of racketeering activity, and the jury was asked to report by special verdicts which potential predicate offenses it had found. The judge wrote:

> [T]he jury found that Stack committed only four racketeering acts involving Paul Kowalchyk, Nick Yovkovich, Tom Maszinski and Anthony Perry. Our examination of the record indicates that, even when viewing the evidence in the light most favorable to the Government, Stack's award of comp days to these four Public Works employees in violation of racketeering acts 9, 10, 12 and 13 did not exceed $5,000 in 1996 and 1997. As such, we reject the Government's claim that "[T]he fact that the jury acquitted defendant Stack of all but four predicate acts in the RICO count is irrelevant,". . . because we do not believe that a reasonable jury could have found the requisite jurisdictional amount of §666

> for either year beyond a reasonable doubt. Conse-
> quently, this Court enters a judgment of acquittal
> as to Stack on Counts Five and Six.

187 F. Supp. 2d at 1032-33. The United States has appealed under the Criminal Appeals Act, 18 U.S.C. §3731, which authorizes appellate review whenever the Double Jeopardy Clause would not forbid the relief that the prosecutor seeks. See *United States v. Wilson*, 420 U.S. 332, 336-39 (1975).

*Wilson* holds that, if a remand would not require a second trial, it does not matter whether the judge's post-trial decision should be labeled an "acquittal*." Id.* at 339-53. See also, e.g., *United States v. Morrison*, 429 U.S. 1 (1976). The prosecutor asks us to reinstate the jury's verdict and remand for the imposition of the sentence authorized by law; as in *Wilson* and *Morrison*, that step is permissible under both the statute and the Constitution. *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977), is not to the contrary. *Martin Linen* holds that the double jeopardy clause forbids a second trial following a Rule 29(c) acquittal but reiterates the holding of *Wilson* that there is no problem when "restoration of the guilty verdict, and not a new trial, would necessarily result if the Government prevailed." 430 U.S. at 570. And *United States v. DiFrancesco*, 449 U.S. 117, 130 (1980), which post-dates *Martin Linen*, recites as one of double jeopardy's fixed stars the principle that "the Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact." See also Peter Westen & Richard Drubel, *Toward a General Theory of Double Jeopardy*, 1978 S. Ct. Rev. 81, 137-55. It has long been this court's view that the United States may appeal from a judge's order acquitting the defendant after the jury has returned a verdict of guilty, for reversal does not require a new trial. See, e.g., *United States v. Klein*, 910 F.2d 1533, 1535 (7th Cir. 1990); *United States v. Blasco*, 581 F.2d 681,

683-84 (7th Cir. 1978); *United States v. Allison*, 555 F.2d 1385, 1386-87 (7th Cir. 1977). We adhere to that position today.[†]

Whether the jury's special verdicts on the RICO charge imply Stack's innocence of the §666 charges is open to doubt. Maybe the jury stopped after identifying Kowalchyk, Yovkovich, Maszinski, and Perry because it deemed four predicate acts enough to establish the prohibited pattern of racketeering; the verdict thus need not establish that this is *all* Stack did. But even if the RICO and §666 verdicts are irreconcilable, this does not vitiate the jury's disposition of the §666 counts. Inconsistency does not spoil a conviction. See *United States v. Powell*, 469 U.S. 57 (1984). To the extent that the district judge may have entertained an independent view about the evidence, he was not permitted to do so; Rule 29(c) does not authorize the judge to play thirteenth juror. See Charles Alan Wright, 2A *Federal Practice & Procedure* §467 (3d ed. 2000) (collecting authority). The issue on a motion under Rule 29(c) is the same as the issue on appeal: whether the evidence, taken in the light most favorable to the verdict, permits a sensible person to find beyond a reasonable doubt that the defendant committed the crime alleged. The evidence permitted a sen-

---

[†] Every other court of appeals that has addressed the issue agrees with our view that *Martin Linen* does not affect the holding of *Wilson*, and that a post-trial acquittal therefore is appealable when a new trial will not ensue. See, e.g., *United States v. Coleman*, 811 F.2d 804, 805 (3d Cir. 1987); *United States v. Sharif*, 817 F.2d 1375, 1376 (9th Cir. 1987); *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir, 1989). For more citations, and a discussion, see Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15B *Federal Practice & Procedure* §3919.5 at 673-88 & n.85 (2d ed. 1991 & 2002 Supp.); Charles Alan Wright, 2A *Federal Practice & Procedure* §469 at 318-20 & n.5 (3d ed. 2000).

sible jury to find that Stack credited employees with more than $5,000 in unearned comp time in each of 1996 and 1997; the City's records provide compelling evidence on that score. Stack therefore must be sentenced on the §666 convictions.

We spoke loosely in treating Stack's RICO predicate offenses as instances of misapplication in violation of §666, because offenses under that law are not authorized predicates. See 18 U.S.C. §1961. Nor are state theft or misapplication offenses. Section 1961(1)(B) enumerates the federal crimes that are "racketeering activity", and §1961(1)(A) has a shorter but more general list of state offenses:

> [A]ny act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in [21 U.S.C. §802]), which is chargeable under State law and punishable by imprisonment for more than one year[.]

The indictment charged that Stack's award of comp time for political work was "bribery" under Illinois law, which in 720 ILCS 5/33-1(a) says that a person commits that crime when,

> with intent to influence the performance of any act related to the employment or function of any public officer, [or] public employee . . . he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept[.]

Stack's RICO conviction is valid only if the use of public money to pay for political assistance violates §5/33-1(a). The prosecutor alleged that Genova, too, committed the predicate offense of bribery, but in his case the underlying acts concerned the Statements of Economic Interest that elected officials must make annually. Genova filed statements that

did not disclose the money he received from Gulotta & Kawanna; this omission, according to the indictment, violated 720 ILCS 5/33-3, a statute covering several varieties of official misconduct. Relying on *United States v. Garner*, 837 F.2d 1404 (7th Cir. 1987), the district judge instructed the jury that official misconduct in violation of §5/33-3 is a form of bribery, and the jury then convicted Genova of violating RICO. After trial the judge concluded that this instruction had been mistaken, 187 F. Supp. 2d at 1019-21, but that Genova's RICO conviction could stand, because mail fraud (the mailing of these false and misleading forms, as part of a scheme to retain office and continue receiving kickbacks) still supplied the necessary pattern of racketeering activity. Mail fraud, in violation of 18 U.S.C. §1341, *is* on the list in §1961(1)(B). The prosecutor defends this decision and also contends that the jury instruction was correct and that all of the jury's findings thus should stand.

Although we understand the temptation to dilate criminal statutes so that corrupt officials get their comeuppance, people are entitled to clear notice of what the criminal law forbids, and courts must take care not to enlarge the scope of illegality. See, e.g., *Scheidler v. National Organization for Women, Inc.*, 123 S. Ct. 1057 (2003) (rejecting an expansive interpretation of extortion designed to bring noxious activity within RICO); *Bailey v. United States*, 516 U.S. 137 (1995) (rejecting an expansive interpretation of "use" in a gun-control statute); *McNally v. United States*, 483 U.S. 350 (1987) (disapproving the creative "intangible rights" theory of mail fraud). Congress responded to *Bailey* and *McNally* by amending the statutes to provide a basis for the theories the courts had developed. Perhaps RICO should cover political corruption that does not entail bribery or extortion. But such a change should occur through legislation rather than prosecutorial and judicial creativity. That is the message of *Scheidler*, *Bailey*, *McNally* and other recent cases; this principle leads us to conclude that neither misapplication of public funds nor concealment of illicit income is "bribery."

Let us start with Genova's situation. Gulotta bribed Genova, but Genova did not bribe anyone—certainly not the county bureaucrats who received and put on public view his Statements of Economic Interest. Genova did not pay anyone to perform any official duty. The idea that any violation of 720 ILCS 5/33-3 entails bribery comes from failure to distinguish among its subsections. It provides:

> A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
>
> > (a) Intentionally or recklessly fails to perform any mandatory duty as required by law; or
> >
> > (b) Knowingly performs an act which he knows he is forbidden by law to perform; or
> >
> > (c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or
> >
> > (d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.
>
> A public officer or employee convicted of violating any provision of this Section forfeits his office or employment. In addition, he commits a Class 3 felony.

*Garner* dealt with subsection (d), which defines a species of bribery. 837 F.2d at 1417-19. Genova's misconduct, however, was alleged to violate subsection (c). Using §5/33-3(c) is itself a stretch, for the law requiring officials to file Statements of Economic Interest has its own penalty clause. Someone who files a false or incomplete statement commits a Class A misdemeanor, see 5 ILCS 420/4A-107, and no misdemeanor is "racketeering activity" under RICO. We could not find any Illinois decision suggesting that any statute other than §420/4A-107 applies to a false, incomplete,

or misleading Statement of Economic Interest. At all events, §5/33-3(c) does not read like a definition of bribery and therefore may not be used as a predicate offense under RICO.

Stack's conduct also is hard to see as bribery. Stack did not pay the employees out of his own pocket, or any private purse, but used the City's funds. That's why he was properly convicted under §666. Nor did Stack use the offer of comp time and overtime pay to "influence the performance of any act related to the employment or function of any public officer, [or] public employee"; the point of the §666 prosecution is that political activities are *not* the performance of a garbage collector's official duties. Public Works employees were entitled to unpaid leave for political endeavors; the §666 problem was paying them for that time, while the problem with bribery is paying for official tasks that the employee is supposed to perform, without outside financial influence, as part of his job. If, on the other hand, we conceive of political work as part of "the job" in Calumet City, then there is no bribery in disbursing wages from the City treasury. A bureaucrat who tells sanitation and snow removal employees to ensure that the mayor's neighborhood is cleaned up early and often may or may not have committed a political sin, but he has not committed the crime of bribery; no more so when he diverts employees' time to more overtly political endeavors. Speedy pothole repair for neighborhoods that support the incumbent is common in municipal government, and we do not for a second suppose that putting salaried workers to this political end is bribery—yet that is an implication of the prosecution's theory. The United States concedes that no Illinois decision supports its view that using public funds to pay municipal employees for political labor is bribery under 720 ILCS 5/33-1, and it would deprive Stack of fair warning to put that statute to such a novel use in order to secure his conviction for violating RICO. Cf. *Bouie v. Columbia*, 378 U.S. 347 (1964). Stack's RICO conviction cannot stand.

Whether Genova's RICO conviction is tenable depends on the mail fraud convictions (and the predicate acts based on mail fraud). Each count of mail fraud (and each parallel predicate act under the RICO charge) represented one annual Statement of Economic Interest that omitted the money Genova had received the prior year from Gulotta & Kawanna. Genova does not contest the jury's evident conclusion that the statements (and hence the mailings) were false. He does contend that they were not part of a scheme to defraud, but this goes nowhere. Keeping a lid on the kickbacks was essential to permit their continuation. Genova hoodwinked Calumet City out of the money he received as kickbacks; he also defrauded the voters out of their intangible right to his honest services—a theory of culpability resurrected by 18 U.S.C. §1346, enacted soon after *McNally*. A jury sensibly could conclude that the false mailings were integral to this scheme, so that Genova violated §1341. See, e.g., *Schmuck v. United States*, 489 U.S. 705 (1989). And because the scheme extended over several years, a jury also sensibly could find a pattern of racketeering. See *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). Because the jury returned special verdicts identifying particular racketeering acts, we know that it determined beyond a reasonable doubt that Genova committed at least two mail frauds, and there is no good reason to think that the verdicts finding mail fraud predicates could have been influenced by the incorrect jury instruction about treating 720 ILCS 5/33-3 as a form of bribery. Both the mail fraud and the RICO convictions therefore are untainted by error.

Gulotta was convicted of participating in Genova's mail fraud scheme—whether as a principal or as an assistant under 18 U.S.C. §2 does not matter. Mail fraud predicates also supply the basis for his RICO conviction. Section 1341 defines the crime as a "scheme or artifice to defraud," and the district judge (as trier of fact in Gulotta's bench trial)

concluded that Gulotta had participated in this scheme by supplying the money that Genova then concealed through false mailings (and by keeping the residue of what the City had paid Gulotta & Kawanna). Gulotta did not prepare or mail the statements; that was done by Genova's secretary. Nor did Gulotta vet them; that task fell to Jerry Lambert, the City Attorney. Still, Gulotta is criminally culpable, either as a principal or under §2, if Genova's use of the mail was reasonably foreseeable to Gulotta as part of the scheme. So the district judge found: "The 1996, 1997 and 1998 Statement of Economic Interest forms were all caused to be mailed to the Cook County Clerk through the U.S. mails by Genova, and such mailings were reasonably foreseeable to Gulotta and aided and abetted by him." 167 F. Supp. 2d at 1030. The evidence adequately supports this finding. Gulotta was experienced in Illinois municipal law (or so he assured Calumet City when undertaking to perform its legal business) and therefore surely knew that elected officials must file annual reports of their income. Not in his wildest dreams could Gulotta have imagined that Genova would reveal the kickbacks, or that he would take the forms to the County Clerk's office by bicycle for filing. So when Genova did the expected—omitting the kickbacks and mailing the forms—this was reasonably foreseeable, or so the judge could conclude without making a clear error of fact.

Defendants have made many other arguments about their convictions, but none requires separate discussion. The district court's handling of them does not require supplementation. Likewise we pass in silence most of the arguments about the sentences; these have been considered and found unpersuasive except to the extent discussed below.

RICO provides for forfeiture in addition to fines and imprisonment:

> (a) Whoever violates [18 U.S.C. §1962] . . . shall forfeit to the United States, irrespective of any

provision of State law—(1) any interest the person has acquired or maintained in violation of section 1962; (2) any—(A) interest in; (B) security of; (C) claim against; or (D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) Property subject to criminal forfeiture under this section includes—(1) real property, including things growing on, affixed to, and found in land; and (2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

(c) All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee

> establishes in a hearing pursuant to subsection (*l*) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

18 U.S.C. §1963. The district court ordered Gulotta to forfeit the entire amount the City had paid to Gulotta & Kawanna, without any deduction for the bribes paid to Genova. It ordered Genova to forfeit the bribes he received, plus the amounts Gulotta & Kawanna retained, plus the wages improperly paid to the City's workers for political labors, plus the value of renovations to Genova's home that were accomplished with the assistance of workers paid by the City.

Restitution is loss based, while forfeiture is gain based. The rule relevant to this case, §1963(a)(3), requires forfeiture of "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity". A change in form from the proceeds immediately obtained from crime—for example, use of criminal lucre to buy a house—does not prevent forfeiture of the resulting property. See *United States v. Ginsburg*, 773 F.2d 798 (7th Cir. 1985) (en banc). Still, there must *be* "proceeds"—which means profits net of the costs of the criminal business. See *United States v. Masters*, 924 F.2d 1362, 1369-70 (7th Cir. 1991); cf. *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002). Other circuits have defined "proceeds" differently. See Comment, *The Scope of Criminal Forfeiture Under RICO: The Appropriate Definition of "Proceeds*," 66 U. Chi. L. Rev. 1289 (1999). But the United States has not asked us to revisit *Masters*, and its approach is incompatible with the forfeiture ordered here.

The amount that Gulotta received from the City and handed over to Genova is not a net profit from Gulotta's perspective; bribes paid to Genova were a cost of doing bus-

iness that, under *Masters*, must be deducted. Gulotta &
Kawanna does not have the money any longer, so Gulotta
cannot turn it over to the United States. Nonetheless,
Genova and Gulotta, as partners in crime, are jointly and
severally liable for the forfeitable proceeds of their activi-
ties. *Masters*, 924 F.2d at 1369-70. So the kickback, after
being subtracted as a cost from Gulotta's perspective, is
added back as proceeds from Genova's.

Under *Masters*, Gulotta is entitled to subtract from the
gross proceeds the ordinary and necessary costs of generat-
ing the income, such as the salaries of associates and the
costs of maintaining a law office—and there is no corre-
sponding addition, because neither jury nor judge found
that any of the other lawyers or staff at Gulotta & Kawanna
is criminally responsible for this scheme. Gulotta's brief
does not mention the possibility of these subtractions
(perhaps because he claims to be destitute and is repre-
sented by appointed counsel, so the details of the forfeiture
calculation are unlikely to make any difference), but the
district court's approach nonetheless was plain error. On
remand, only net proceeds should be ordered forfeited.

Genova concedes that he must forfeit the bribes received
from Gulotta. He contests the order to forfeit the amount of
the legal fees that Gulotta & Kawanna retained for services
rendered. True enough, money the City paid to Gulotta &
Kawanna was never "proceeds" of any kind, gross *or* net,
from Genova's perspective. Yet Genova, like Gulotta, bears
responsibility for the whole scheme—and, just as with
Gulotta, Genova is entitled to subtract Gulotta &
Kawanna's costs of furnishing the legal services.

Perhaps Genova could have been ordered to make resti-
tution to the City of the difference between the amount it
paid Gulotta & Kawanna and the market value of the legal
services the City received. See *United States v. Martin*, 195
F.3d 961, 967-69 (7th Cir. 1999). At oral argument the

prosecutor contended that this value is negligible because the City wanted, and did not receive, conflict-free counsel. But no restitution was included in the sentence and the United States has not sought restitution by cross-appeal. It wants forfeiture deposited in the federal Treasury rather than restitution made to the City. So far as *forfeiture* is concerned, however, both Gulotta and Genova are entitled to credit for the costs of generating the revenue. That these costs may exceed the value of services rendered (making the forfeitable proceeds smaller than the amount of restitution that could have been awarded) does not justify disregarding them.

The money that the City paid to employees for political services is not forfeitable from Genova, who did not receive a penny and thus has no "proceeds." True, he enjoyed whatever value the political assistance may have created, but this intangible asset—his "political capital," so to speak—is not forfeitable even in principle. (It is not "intangible personal property" as §1963(b)(2) uses that phrase.) Anyway, its value has taken a nose dive in recent years. Again this illustrates the difference between restitution and forfeiture. Genova caused the City to *lose* the amount paid to the workers, but this did not create a corresponding asset in his hands available for forfeiture.

Finally, although Genova's home is an asset covered by §1963(b)(1), and it is agreed that Calumet City employees performed work that increased its value by $60,000, the district court did not attempt to determine how much of this value represents "proceeds" of crime. Genova contends that he provided the materials and city workers the labor. Suppose Genova used the money from the kickbacks to purchase $30,000 worth of bricks and lumber, while the City supplied labor worth $30,000. Forfeiting the whole amount of the bribes he received, and then forfeiting $60,000 of the equity in his home, would be excessive. The money received in bribes could be *traced* to the home on this hypothesis and

then forfeited. But to order it forfeited once as cash and a second time as building materials is double counting. Here the law of forfeiture and the law of restitution work the same way: the ill-got gain is forfeited (or repaid via restitution), but value added independently by the accused is neither a forfeitable gain nor a loss to the victim. See *United States v. Shepard*, 269 F.3d 884, 887-88 (7th Cir. 2001). So if Genova supplied the building materials from lawful income (such as his salary), then this value is not part of the proceeds that can be forfeited; and if the supplies that Genova furnished came from criminal proceeds, then the value may be forfeited once, as cash *or* as an interest in the property, but not twice.

Unfortunately, the record does not establish how much of the value came from Genova and how much from the City's coffers. The fact that Genova was acquitted of counts charging that he devoted the City's resources to his home-improvement projects does not eliminate all possibility of a forfeiture based on these activities. Even counts on which the jury acquits may be considered in sentencing, if the judge finds by a preponderance of the evidence that the criminal activities occurred. See *United States v. Watts*, 519 U.S. 148 (1997). (This principle is subject to the proviso, see *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that only findings by the trier of fact under the reasonable-doubt standard support an increase in the statutory maximum punishment, but there is no "statutory maximum" for restitution or forfeiture. See *United States v. Behrman*, 235 F.3d 1049, 1053-54 (7th Cir. 2000).) We may assume that the defendant has the burden of raising a contention that a given asset contains a mixture of forfeitable proceeds and nonforfeitable contributions from lawful sources; likewise we may assume that the defendant bears at least some burden of production with respect to this contention. (Decision on both subjects can await a case in which the answer matters.) But once the defendant has contended, with some evidentiary support, that at least some of the value in a given

asset came from lawful, nonforfeitable sources, then the prosecutor must demonstrate how much is forfeitable. The United States and the district court must have agreed with this position, because the prosecutor did not contend (nor did the district judge find) that the entire value of Genova's house is forfeitable; the sentence directs him to forfeit only the $60,000 value of the improvements. But just as the house as a whole contains nonforfeitable value, so the improvements made during his mayoralty may contain nonforfeitable value. The district judge must try to determine which is which. As the wrongdoer, Genova bears the risk of uncertainty in this endeavor.

Bottom line: Genova's and Gulotta's convictions and sentences are affirmed, but the judgments with respect to forfeiture are vacated, and their cases are remanded for recalculation of the forfeiture amounts consistent with this opinion. Stack's RICO conviction is reversed but his §666 convictions are reinstated on the cross-appeal, and his case is remanded for resentencing.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*