11-1009-cr
United States v. Torres

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———————

August Term, 2011

(Argued: February 6, 2012     Decided: December 5, 2012)

Docket No. 11-1009-cr

———————

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

ANA TORRES,

*Defendant-Appellant.*

———————

Before:  WESLEY and CARNEY, *Circuit Judges*, and CEDARBAUM, *District Judge.*[*]

Appeal from a final judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*), ordering Defendant-Appellant Ana Torres to forfeit $11,724 to the United States and to pay the same amount in restitution to the New York City Housing Authority as a result of her conviction for theft of government property in violation of 18 U.S.C. § 641.  We conclude that because the money Torres was ordered to forfeit was "obtained" by her "indirectly" as a result of her offense, was "traceable to" that offense, and constituted the "net gain" from that offense, the forfeiture order was authorized by the plain language of the relevant forfeiture statute, 18 U.S.C. § 981.  Although Torres does not challenge the order of restitution, we also conclude that the imposition of both forfeiture and restitution orders was proper in this case because the orders will be paid to different entities, are authorized by different statutes, and serve different purposes. Accordingly, the judgment of the district court is AFFIRMED.

---

[*] The Honorable Miriam Goldman Cedarbaum, United States District Court Judge for the Southern District of New York, sitting by designation.

COLLEEN P. CASSIDY, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant.*

DANIEL C. RICHENTHAL, Assistant United States Attorney (Iris Lan, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

SUSAN L. CARNEY, *Circuit Judge*:

Defendant Ana Torres stands convicted of theft of government property arising from the fraud she carried out to obtain subsidized housing benefits in New York City. She appeals from a March 2, 2011 judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*), ordering her, first, to pay $11,724 in restitution to the New York City Housing Authority (NYCHA), and second, to forfeit $11,724 to the United States. The sum that is the subject of each order represents rental subsidies that were paid for Torres's benefit as a result of her deliberate under-reporting of her household's income on applications for subsidized housing in New York City over a period of more than four years.

Torres does not contest the restitution order. As to forfeiture, however, she argues that the district court's order was not authorized by law. There is no dispute that the government may seek forfeiture as a penalty for the crime of which she was convicted. Torres's challenge rests instead on the observation that the United States Department of Housing and Urban Development (HUD) paid the subsidies of

2

which Torres defrauded it directly to NYCHA — her landlord — and not to Torres. Therefore, she contends, she never "obtained" the subsidies within the meaning of the applicable forfeiture statute, 18 U.S.C. § 981, as is required to constitute forfeitable "proceeds" of her offense. Rather, she "retained" money as a result of her fraud, and received only the inchoate and non-forfeitable benefit of residing in subsidized housing at reduced cost.

For the reasons set forth below, we disagree. We conclude that the $11,724 that Torres saved by duping NYCHA and HUD constituted "property" that was "obtained [by Torres] . . . indirectly" as a result of her offense, and may also be fairly characterized as "proceeds traceable to" or "net gain" realized from her offense. Each phrase provides an adequate premise under § 981 for the government's forfeiture complaint and the court's forfeiture award.

Moreover, there was nothing improper about the government's decision to seek the imposition of forfeiture and restitution in this case. Restitution and forfeiture are authorized by different statutes and serve different purposes — one of remediating a loss, the other of disgorging a gain. Their concurrent imposition has been judicially examined and upheld on numerous occasions in our Circuit and elsewhere. And, the related orders here contemplate payments to different payees, one municipal and one federal. Thus, no legal bar prevented the government's application for both, and with such applications before it, the district court was bound to grant those applications. Further, once Torres begins making the required payments, an equitable remedy may be available to her. Finally, where restitution

3

and forfeiture are both authorized by law, the decision to pursue both concurrently is committed to the government, not to the courts.

We therefore AFFIRM the judgment of the district court *in toto*.


Background

Ana Torres was charged by information with one count of theft of government property in violation of 18 U.S.C. § 641, and four counts of making false statements to the government in violation of 18 U.S.C. § 1001. The charges derived from allegations that, over a four-year period, Torres submitted false affidavits understating her household's earnings level in a successful effort to obtain rental subsidy benefits for her NYCHA-administered housing.[1]

In September 2010, Torres pleaded guilty before a magistrate judge to a single count of theft of government property, and one month later, the district court accepted her plea. In her plea colloquy, Torres admitted the charges and acknowledged that, from October 2005 through mid-January 2010, she had paid less in rent for her subsidized apartment than would have been required of her had she accurately reported her income and that of others living in the household.

The Pre-Sentence Report (PSR) stated, and Torres did not dispute, that the sum she was excused from paying to NYCHA during that time period because of her

---

[1] As required by Federal Rule of Criminal Procedure 32.2(a), the information contained a forfeiture allegation, advising that the government intended to seek an order claiming as forfeited so much of Torres's property as "constitutes or is derived from proceeds traceable to" the theft of government benefits. Appendix ("A") 13-14.

4

fraud was $11,724.[2]  The PSR further informed the district court, also without

dispute by Torres, that in 2004 Torres had moved to an apartment in Rhode Island,

where she conducted a parallel fraud causing HUD a loss of $25,155.[3]  Despite her

residence elsewhere, Torres reported to NYCHA that she was living in the New

York apartment, and, on her income affidavits, Torres understated both her own

income and the income attributable to her children.  She also failed to report that

another adult was living in the New York apartment and earning income.

The falsely-reported income information served as NYCHA's basis for

calculating the amount of rent that Torres, as tenant of record, would be required to

pay for the New York City apartment.  Subsidies from HUD covered the difference

between what Torres ostensibly could afford and the total rent charged by NYCHA.

After the district court accepted Torres's guilty plea,[4] the government applied

for a forfeiture order in the amount of $11,724 under 28 U.S.C. § 2461(c) and 18

U.S.C. § 981(a)(1)(C).  The former statute permits the government to request

forfeiture in any criminal case in which either civil or criminal forfeiture is

---

[2] According to the PSR, Torres had committed fraud in relation to her New York apartment dating as far back as July 2002.

[3] When she was sentenced for the New York fraud, Torres had not been prosecuted in Rhode Island for her criminal acts occurring in that jurisdiction.  The record before us does not reflect any subsequent prosecution.

[4] The district court found that, for this Class C felony, Torres faced a maximum sentence of up to ten years' imprisonment, and a fine of the greater of up to $250,000 or twice the gain to the defendant or loss to the victim, and a mandatory $100 special assessment.

authorized for the charged offense.[5] The latter statute authorizes civil forfeiture for any offense constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7), which includes the offense of Torres's conviction: theft of government property in violation of 18 U.S.C. § 641.

Under § 981, any property that "constitutes or is derived from [the] proceeds traceable to" the offense is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). Section 981(a)(2)(A) defines "proceeds" (for purposes of Torres's crime) as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A).

The district court sentenced Torres to a term of three years' probation and restitution to NYCHA as described above. It also granted the requested forfeiture order, requiring Torres to pay $11,724 to the United States Attorney's Office. Torres opposed the forfeiture order, arguing that § 981 did not apply to any funds held by her because she had not "obtained" funds as a result of her offense; rather, she had received only "the intangible benefit of the right to live in subsidized housing." A. 154. The court rejected Torres's challenge, reasoning that, by

---

[5] Section 2461(c) of Title 28 provides in relevant part as follows:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case . . . .

6

fraudulently applying for and receiving the rental subsidies, Torres had "obtained" these funds: she had been able to keep and use as she chose $11,724 that she would otherwise have had to pay in rent.[6]

Torres appeals the forfeiture order to this Court, largely reprising the arguments she presented in the district court. She does not directly challenge the legality of the district court's concurrent application of the restitution and forfeiture statutes, but because she contends that their simultaneous imposition is unusual in practice and harsh in result, we consider whether any legal doctrine bars forfeiture when imposed in addition to restitution in the circumstances presented here.

## Discussion

A.    *Interpreting Section 981*

As set forth above, § 981 of title 18, entitled "Civil forfeiture," makes subject to forfeiture "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)." 18 U.S.C. § 981(a)(1)(C). No one

---

[6] The sentencing transcript suggests that the district court initially understood the government not to be seeking two separate payments of $11,274, one in restitution to NYCHA and one in forfeiture to the U.S. Attorney. See A. 150-51, 154. The district court's later orders, however, direct two separate payments, differently denominated and addressed. Thus, as a "Criminal Monetary Penalty," Torres is directed to make restitution of $11,724 to NYCHA, on a payment schedule established by the court, A. 170, and with interest and a fine if payment is late, A. 169. Separately, Torres is ordered under Fed. R. Crim. P. 32.2 to forfeit $11,724, payable to the U.S. Marshals Service for processing on behalf of the U.S. Attorney's Office. A. 163-165 (Mar. 2, 2011 Forfeiture Order); A. 170. In light of the separate orders, we take the record to mean that Torres is subject to two distinct payment obligations of equal amounts and totaling $23,448. The parties' briefs reflect the same understanding. Appellant's Br. 26-28; Appellee's Br. 18.

disputes that "specified unlawful activity" includes the crime of Torres's conviction, theft of government property under 18 U.S.C. § 641. We therefore begin our analysis by looking to the definition of "proceeds" provided in § 981 to determine whether Torres held any property that "constitutes or is derived from" such proceeds.

In cases involving "unlawful activities" such as those Torres pursued, "proceeds" means "property of any kind *obtained directly or indirectly*, as the result of the commission of the offense giving rise to forfeiture, and any *property traceable thereto*, and is not limited to the *net gain or profit* realized from the offense." 18 U.S.C. § 981(a)(2)(A) (emphasis supplied).[7] The statute thus broadly treats as "proceeds," in Torres's case, any "property" that was "obtained directly or indirectly[] as a result of the commission" of the theft of government property. Id. It captures property "traceable to" that theft. Id. And it covers the "net gain or profit realized from the offense." Id.

_____

[7] For ease of reference, we set out here more fully the relevant parts of § 981:

> (a)(1) The following property is subject to forfeiture to the United States:
> . . .
>
>     (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" . . . .
>
> (a)(2) For purposes of paragraph (1), the term "proceeds" is defined as follows:
>
>     (A) In cases involving . . . [certain] unlawful activities . . . , the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

8

Torres contends that she did not "obtain" any property through her theft because she never had possession or control over the subsidy funds, which were paid to NYCHA on her behalf. She argues that, at most, she derived the benefit of living in an apartment at a below-market rate, but that benefit does not constitute "property," and although money changed hands on her behalf, those funds were never sufficiently in her control to be subject to forfeiture now.

It is true that the unadorned word "obtain" is defined as "to succeed in gaining possession of . . . ; procure or acquire." American Heritage Dictionary 859 (2d Coll. ed. 1991). When applied to a non-fungible item such as an automobile, for example, its meaning may be very concrete and bounded. But in assessing whether Torres "obtained" fungible proceeds subject to forfeiture under § 981, we may not read the word in isolation; we must consider it in light of its modifiers and the language of the rest of the statute. "The meaning of a word [or phrase] cannot be determined in isolation, but must be drawn from the context in which it is used." In re Sept. 11 Prop. Damage Litig., 650 F.3d 145, 155 (2d Cir. 2011) (internal quotation marks omitted).

The rest of the text of § 981(a)(2)(A) informs us that property subject to forfeiture may have been "obtained" by the defendant "directly" or "indirectly" to render it forfeitable under the statute. The subsection further reaches (and "is not limited to") "net gain or profit," and property "traceable" to the property that was obtained by the defendant as a result of the offense. This language evinces an intent to reach all manner of property in the defendant's possession and fairly

9

considered as derived from the crime of conviction. Stated otherwise, so long as there is a causal nexus between the wrongdoer's possession of the property and her crime, the property may be said to have been "obtained" by her "indirectly" as a result of her offense.

That the property may have been obtained "indirectly" and need only be "traceable to" or constitute the "net gain" from the crime suggests Congress's desire to encompass not only the very property that was unlawfully obtained. Rather, the forfeiture statute envisions and tolerates some attenuation of the chain of events between the crime and the related property or gain it makes subject to forfeiture.

In addition, our case law eliminates any doubt about whether cash is among the types of property subject to forfeiture under this subsection. See United States v. Kalish, 626 F.3d 165, 168-169 (2d Cir. 2011) (upholding forfeiture order of $3.95 million in cash); United States v. Uddin, 551 F.3d 176, 181 (2d Cir. 2009) (finding forfeitable a sum of cash diverted from food stamp program). These holdings reflect a well-rooted judicial view that in § 981, Congress intended to authorize disgorgement of gain, wherever gain fairly traceable to a wrong may be found. Such gain is property obtained "indirectly" as a result of the commission of an offense, as well as "net gain" derived from such an offense. And when the property subject to a forfeiture order under § 981 is in the custody or possession of the defendant, and not a third party, concerns about traceability and nexus well-nigh vanish.

We find unpersuasive Torres's argument that she did not "obtain" proceeds, but only "retained" or "maintained" funds, which, accordingly, were not subject to

10

forfeiture. In support of this position, she points to the definition of "proceeds" used in the money-laundering statute, 18 U.S.C. § 1956(c)(9). There, as a constituent element of the substantive offense, "proceeds" is defined as "any property derived from or *obtained or retained*, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." Id. (emphasis supplied). Torres places significant weight on this statute's use of the word "retained," in contrast to § 981's use only of "obtained," arguing that this demonstrates that Congress knew how to distinguish between property "obtained" and property "retained," and that the omission of the word "retained" in § 981 precludes the interpretation we adopt here. Making a similar point, Torres contrasts § 981 with the forfeiture provision of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., which requires forfeiture of "any interest [the defendant] has *acquired or maintained*" in violation of RICO. Id. at § 1963(a)(1) (emphasis supplied).

Congress's use of other formulations in other statutes not enacted in coordination with § 981 hardly compels us, however, to ignore the context and import of the language that it did use in § 981.[8] We do not accept that the omission of "retained" or "maintained" from § 981 evinces a Congressional intent not to reach

---

[8] The definition of "proceeds" provided by § 981(a)(2)(A) was inserted by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185 § 20(b), 114 Stat. 202, 224. The definition of "proceeds" adopted at § 1956(c)(9), the money-laundering statute, was inserted nine years later by the Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21 § 2(f)(1), 123 Stat. 1617, 1618. And RICO's forfeiture provision, § 1963(a)(1), was enacted long before CAFRA as part of the Organized Crime Control Act of 1970, Pub. L. 91-452 § 901(a), 84 Stat. 922, 943.

11

property that is nonetheless "traceable to" and constitutes the "net gain" of the defendant's fraud: Congress's inclusion of the broadening and attenuating language just quoted, as well as its use of the modifier "indirectly," easily offset the absence of the words "retained" and "maintained" from the statute. No more is required to support forfeiture under § 981.

In a related but somewhat different vein, Torres argues that the only benefit she received from her offense was the inchoate right to live in an apartment (or let someone else live there) at a reduced rent. This intangible benefit, she urges, did not constitute "proceeds" or "property," and her related monetary savings should not be subject to forfeiture. In support, she cites <u>United States v. Hemingway</u>, No. 10 Cr. 302 (S.D.N.Y. Dec. 7, 2010), a similar housing-fraud case in which the district court denied without written opinion the government's request for a forfeiture order. At sentencing in <u>Hemingway</u>, the court echoed Torres's position that the housing-fraud defendant had obtained only the intangible benefit of paying a below-market rent, and no forfeitable asset was under the defendant's control.

We disagree with an analysis that seeks to characterize Torres's unlawful gain as inchoate and therefore not subject to forfeiture. Torres's is not a circumstance in which the property interest of which the government seeks forfeiture is so intangible and unquantifiable that it could not fairly be considered "proceeds" subject to forfeiture. She took the right to live in subsidized property at a rate lower than others were required to pay, and in circumstances where the government did in fact pay the margin for her. Hers is thus unlike the benefit

12

derived by the defendant in <u>United States v. Genova</u>, 333 F.3d 750, 762 (7th Cir. 2003), which she also cites as authority.  In <u>Genova</u>, the court determined that the "political capital" obtained by the defendant from his scheme was "not forfeitable even in principle" because the defendant "did not receive a penny" and the amount lost from the scheme "did not create a corresponding asset in his hands available for forfeiture."  <u>Id.</u>  The property interest here, in contrast, is found in a discrete sum of money saved by Torres, exactly corresponding to the reduction she was granted on her rent, and available for her use as a direct result of her fraud.[9]

Finally, Torres cites our recent decision in <u>United States v. Contorinis</u>, 692 F.3d 136 (2d Cir. 2012), in support of her additional argument that, because the payments that were the fruit of her wrong went directly to NYCHA from HUD, she holds no proceeds subject to forfeiture.  In <u>Contorinis</u>, our Court vacated a district court's order requiring the defendant, who had been convicted of securities fraud, to forfeit $12.65 million in profits that his fraudulent trading earned for the investment fund that employed him.  The vacatur rested on the custody of the illegal profits in the hands of an innocent third party — his employer.  Those funds,

---

[9] Torres also attempts to analogize the use of "property" in the forfeiture statute to the Hobbs Act text as interpreted by the Supreme Court in <u>Scheidler v. Nat'l Org. for Women, Inc.</u>, 537 U.S. 393, 397-98 (2003), where abortion clinic protesters were charged with obtaining certain "property" by extortion, in violation of the Hobbs Act, 18 U.S.C. §1951(b)(2).  The property at issue there was the "women's right to seek medical services," "doctors' rights to perform their jobs," and "clinics' rights to provide medical services."  <u>Id.</u> at 399.  Rejecting that claim, the <u>Scheidler</u> Court found that the "right to seek medical services," for instance, is not "something of value" that can be "exercise[d], transfer[red], or s[old]" and is therefore not properly considered "property" under the Hobbs Act.  <u>Id.</u> at 405.  That analysis does not apply here because we are dealing with a different statute and a different type of property, which, unlike the intangible "right to seek medical services," has a precisely ascertainable monetary value.

we held, were insufficiently subject to Contorinis's dominion and control to be forfeitable by Contorinis.  Id. at 148.

Our decision in Contorinis, however, applied a different law to distinguishable facts.  As a threshold matter, we applied a statutory definition of "proceeds" other than the definition governing Torres's case.[10]  Id. at 145 & n.3 (applying § 981(a)(2)(B)).  Unlike the definition of "proceeds" applicable here, the definition at issue in Contorinis does not contain the "obtained . . . indirectly," "traceable thereto," or "not limited to . . . net gain or profit" language that we find decisive here.  And even were we to put aside these differences in statutory language, Contorinis would not require vacatur here.  In Contorinis, we reasoned that, to be subject to forfeiture, "the property must have, at some point, been under the defendant's control or the control of his co-conspirators."  Id. at 147.  Because the profits subject to the challenged forfeiture order were earned by and paid to the employer fund, not Contorinis, and because Contorinis did not control disbursements of the fund's profits, those total profits did not represent his own unlawful gain.  We made clear, however, that Contorinis's own portion of those proceeds *could* eventually be subject to forfeiture, despite its payment first to an innocent party.  Id. at 148 & n.4.

Here, in sum, and as the district court observed, Torres had $11,724 available for her use only because she failed to report her income accurately and

---

[10] The statutory definition of "proceeds" applicable in Contorinis was: "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B).

14

failed to pay the amount she otherwise would have owed for rent. Furthermore, Torres exercised control over the size of the fruits of her crime when she chose how much of her household's income to report to NYCHA each year: the more income she fraudulently concealed, the greater the subsidies she received, and the more her net gain from her fraud. Because Torres had this sum of money on hand and available for her personal use as a result of her theft of government housing assistance, we conclude that she "obtained" $11,724 "indirectly" as a result of that theft; the sum is "traceable to" that theft; and it represents the "net gain" from that theft.[11] Only an unnaturally cramped reading would exclude gain of the type won by Torres from the statute's purview. We decline to adopt such a gloss on the statute here.

We acknowledge that, read as we do here, the phrases "property . . . obtained . . . indirectly," "any property traceable thereto," and "net gain" could potentially reach far, and we recognize the dangers inherent in too broad a reading of the forfeiture statutes. See, e.g., 1 David B. Smith, Prosecution and Defense of Forfeiture Cases § 3.02 (2012). The construction we offer here is textually driven, however, and applied in a factual setting that should not lend itself to aggravating those dangers. Torres was ordered to forfeit only the money that she derived from her fraud, and only in an amount that corresponded exactly to the sum of housing

---

[11] Cf. United States v. Capoccia, 402 F. App'x 639, 640 (2d Cir. 2010) (summary order) (affirming amended order requiring forfeiture of property "traceable to the property obtained directly or indirectly as a result of the [defendant's] offenses" and emphasizing that "assets subject to forfeiture are not limited to those that are personally or directly obtained").

15

subsidies that she fraudulently procured; the order was entered against the perpetrator herself, not a third party.

Moreover, to adopt the view that net gain resulting from a theft of government services is *not* forfeitable could mean that, for instance, an individual who fraudulently obtains disaster relief in the form of in-kind benefits need not disgorge his net profits after his fraud is exposed. Cf. United States v. Taylor, 582 F.3d 558 (5th Cir. 2009) (per curiam). We doubt that was intended. Where, solely as a result of a criminal offense, a government agency makes payments to a third party, and that third party directly provides the defendant with benefits that have a quantifiable monetary value, the amounts by which those benefits enriched the defendant are clearly "proceeds" that the defendant "obtained . . . indirectly"; they constitute "net gain"; and they are property "traceable" to the offense of conviction. Section 981(a)(1)(C) supports the resulting forfeiture.

B.     *Imposing forfeiture and restitution concurrently*

The imposition of both forfeiture and restitution in this case was proper. Two different governmental entities are entitled to collect those awards: a municipal agency, NYCHA, is the direct victim of Torres's theft and accordingly is the designated recipient of the restitution award,[12] and a federal agency, the United

---

[12] Restitution of NYCHA's loss is required by the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. MVRA provides that, when sentencing a defendant for any felony offense against property under Title 18, the court "*shall order*, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1) (emphasis supplied). Government agencies are regularly treated as "victims" within the meaning of the MVRA. See, e.g., United States v. Ashubi, No. 07-cr-1008-01, 2008 WL 4449340, at *6 (S.D.N.Y. Oct. 1, 2008) (requiring payment of restitution to United States Department of Agriculture); United States v.

States Department of Justice (DOJ), is the recipient of the forfeiture award.[13]

Case law and commentary establish that the forfeiture and restitution statutes serve different purposes. See United States v. Pescatore, 637 F.3d 128, 138 (2d Cir. 2011) (noting that "[f]orfeiture and restitution are separate remedies with different purposes"); 1 David B. Smith, Prosecution and Defense of Forfeiture Cases § 2.01 ("Forfeiture of the instrumentalities and profits of crime is supposed to interfere with criminal activity and at the same time impose an economic sanction upon criminals and those who connive with them, thus deterring crime."); Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. e (2011) (noting that purpose of restitution in criminal cases is to compensate victims for harm suffered as result of criminal activity).

From this defendant's perspective, an order of forfeiture may not feel much different from an order of restitution, because both orders contemplate cash payments in similar amounts. But as the Seventh Circuit has lucidly observed, "Restitution is loss based, while forfeiture is gain based." United States v. Genova, 333 F.3d at 761. The measures are different, and the purposes distinct. Torres caused a loss to NYCHA and HUD, which she must repair through restitution to

Robinson, No. 04-cr-0580, 2007 WL 2077732, at *1 (E.D.N.Y. July 18, 2007) (reciting that defendant was ordered to make restitution to NYCHA); United States v. Lamboy, No. 04-cr-965-01, 2005 WL 2385850, at *4 (S.D.N.Y. Sept. 28, 2005) (requiring payment of restitution to NYCHA).

[13] The district court's order of forfeiture with regard to Torres provides that "the United States Marshal's Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to [the] forfeited" money. A. 164. The order also provided that payments made under the forfeiture order shall be delivered to the Asset Forfeiture Unit of the U.S. Attorney's Office. Id.

17

NYCHA;[14] she also must disgorge the proceeds of her wrong, which is the money that she derived from her fraud. In Torres's case, the amounts are identical, but they may often be different. See United States v. McGinty, 610 F.3d 1242, 1247 (10th Cir. 2010) (noting that "restitution and forfeiture will not necessarily be in the same amount" because they are calculated differently); see also United States v. Taylor, 582 F.3d at 565-68.

In addition, the court's orders of forfeiture and restitution were mandatory under the statutes applicable here. See 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court *shall* order the forfeiture of the property as part of the sentence in the criminal case[.]" (emphasis supplied)); 18 U.S.C. § 3663A(a)(1) ("[T]he court *shall order*, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ." (emphasis supplied)); United States v. McGinty, 610 F.3d at 1248.

Eight other Circuits to have considered orders of forfeiture and restitution in the face of "double recovery," due process-type challenges have affirmed their concurrent imposition. See United States v. Leon-Delfis, 203 F.3d 103, 115-116 (1st

---

[14] As the provider to NYCHA of Torres's ill-gotten housing subsidies, it appears that HUD and not NYCHA may have suffered the related financial loss. The PSR recommends, however, that restitution be paid to NYCHA, and the district court order directs Torres accordingly. As administrator of the subsidy program, NYCHA could reasonably be designated as the "victim" of the fraud for restitution purposes and recipient of restitution payment under the Mandatory Victims Restitution Act. We assume that NYCHA and HUD have a method for rectifying their own internal accounts to reflect restitution paid to NYCHA. Absent any objection by Torres or the government, we need not pursue the apparent anomaly any further.

Cir. 2000); United States v. Various Computers & Computer Equip., 82 F.3d 582, 588 (3d Cir. 1996); United States v. Alalade, 204 F.3d 536, 539-541 (4th Cir. 2000); United States v. Taylor, 582 F.3d 558, 565-568 (5th Cir. 2009), cert. denied, 130 S. Ct. 1116 (2010); United States v. Emerson, 128 F.3d 557, 566-568 (7th Cir. 1997); United States v. Bright, 353 F.3d 1114, 1120-1125 (9th Cir. 2004); United States v. McGinty, 610 F.3d 1242, 1247-1248 (10th Cir. 2010); United States v. Hoffman-Vaile, 568 F.3d 1335, 1344-1345 (11th Cir. 2009). Indeed, several Circuits have agreed with the Third Circuit's observation in United States v. Various Computers & Computer Equipment, 82 F.3d at 588, that requiring a defendant to pay both restitution and forfeiture "at worst forces the offender to disgorge a total amount equal to twice the value of the proceeds of the crime," which is "in no way disproportionate to the harm inflicted upon government and society by the offense." See, e.g., United States v. Taylor, 582 F.3d at 566; United States v. Emerson, 128 F.3d at 567.

In addition, several Circuits have upheld orders of both forfeiture and restitution in the face of double-recovery challenges where (unlike here) both awards were payable to the federal government, albeit to different federal entities. See United States v. Taylor, 582 F.3d at 566 (rejecting dual recovery challenge to imposition of restitution and forfeiture in disaster fraud context in part because Federal Emergency Management Agency is distinct from DOJ); United States v. Emerson, 128 F.3d at 567 (rejecting defendant's assertion that payment of forfeiture and restitution would create "windfall" for government where payments were

19

directed to Postal Service and DOJ).  Thus, if NYCHA were in fact to remit the restitution to HUD, we would reach no different outcome.

We note further that, in sentencing a defendant for theft of government property, 18 U.S.C. § 3571 authorizes the district court (subject to constraints not relevant here), to impose, *inter alia*, a fine of "not more than the greater of twice the gross gain [accrued by a defendant who derives pecuniary gain] or twice the gross loss [incurred by the victim]."  18 U.S.C. § 3571(d).  Section 3571 thus places the concurrent imposition of restitution and forfeiture in an order-of-magnitude context that tends to confirm the correctness of our ruling.

C.      *The availability of discretionary relief*

Under 18 U.S.C. § 981(e)(6), the Attorney General may "transfer [forfeited] property . . . as restoration to any victim of the offense giving rise to the forfeiture." Thus, although the government is not *required* to apply any payments that Torres makes toward the forfeiture award to reduce her restitution obligation (or vice versa), Torres may seek such relief, and the Attorney General may apply one payment as credit against the other obligation.  See, e.g., United States v. Pescatore, 637 F.3d at 138 (observing that, according to DOJ's manual dealing with forfeiture, government's "discretion may be exercised to transfer forfeited assets to victims where . . . other property is not available to satisfy the order of restitution" (internal quotation marks omitted)); United States v. Kalish, 626 F.3d at 169-70 (noting that "once some payment has been made by way of restitution, a defendant would be in a position to argue that such a payment should be a credit against any

20

then remaining forfeiture amount. . . . [I]t is at least arguable that any money returned to a victim has reduced the amount of 'ill-gotten' gains remaining in the defendant's possession.")[15]

Finally, as described above, sentencing proceedings revealed that Torres engaged in this fraud for eight years; her scheme encompassed two states, Rhode Island and New York; and she stripped her governmental victims — and therefore the taxpayers — of nearly $50,000. Thus, the combined forfeiture and restitution obligations of some $23,000 imposed on Torres fall well short of the total loss caused by her offense.

We therefore conclude that the order of forfeiture was properly imposed. It was authorized by the text of 18 U.S.C. § 981 and it was not impermissibly duplicative of the concurrent restitution order entered by the district court.

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[15] In United States v. Kalish, 626 F.3d at 167, the defendant, convicted of fraudulently collecting advance fees from loan applicants, was subject to orders both of forfeiture and restitution. In response to the defendant's argument that the district court erred by "not offsetting the forfeiture amount by the restitution" amount, we acknowledged that forfeiture and restitution "are authorized by separate statutes, and their simultaneous imposition offends no constitutional provision." Id. at 169. We noted, however, that if the defendant made actual payment on his restitution obligations, he might be entitled to a corresponding reduction in the forfeiture order. In the absence of any evidence that the defendant had made any restitution payments at all, we declined to address the issue further. Id. at 170.