**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

ANDREW G. SHANK,
  *Defendant-Appellant.*

No. 02-4899

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(CR-01-82-WMN)

December 3, 2004

Decided: January 25, 2005

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Dismissed by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Shedd joined.

## COUNSEL

**ARGUED:** Mark Thomas Stancil, BAKER BOTTS, Washington, D.C., for Appellant. Robert Reeves Harding, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Paul F. Enzinna, BAKER BOTTS, Washington, D.C., for Appellant. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Andrew G. Shank appeals the denial of his Fed. R. Crim. P. 35 motion. Because former Rule 35(c), now Rule 35(a),[1] imposes a seven-day jurisdictional time limit and the district court failed to act within that period, we dismiss the appeal.

I.

On February 2, 2002, Shank entered into a plea agreement with the United States Attorney's Office for the District of Maryland, in which he agreed to plead guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 (2000). In the statement of facts accompanying his plea agreement, Shank admitted misrepresenting his assets and liabilities both to obtain various bank loans and in connection with his bankruptcy filing. As part of the plea agreement, for purposes of sentencing, the parties agreed that the total loss amount attributable to Shank's fraud was between $400,000 and $1,000,000. However, they specifically left open for determination by the court the loss amount caused to Mercantile Safe Deposit & Trust Company and Mercantile Mortgage Corporation (referred to jointly as "Mercantile").

At the June 25, 2002 sentencing proceeding, the district court determined the loss to Mercantile to be $305,000 and sentenced Shank under the United States Sentencing Guidelines to 41 months imprisonment. The judgment was entered on June 27, 2002.

On July 3, 2002, Shank filed a Rule 35(c) motion seeking to correct his sentence because "the amount of loss as to Mercantile was calculated incorrectly."[2] On November 1, 2002, the district court denied his motion, and on November 8, 2002, Shank appealed.

---

[1]The 2002 amendments to Rule 35 moved the substantive provisions of Rule 35(c), under which Shank filed the motion at issue here, to Rule 35(a). Fed. R. Crim. P. 35 advisory committee's note on 2002 amendments.

[2]Shank also makes additional substantive arguments. But, because we hold that the district court lacked jurisdiction to act on Shank's motion when it did, we do not consider any of his substantive arguments.

## II.

The dispositive question presented here is whether former Rule 35(c), now Rule 35(a), divests a district court of jurisdiction to correct sentencing errors more than seven days after sentencing. A review of the history of the rule helps to resolve this question.

Before the Sentencing Reform Act of 1984 became effective on November 1, 1987, Rule 35 allowed a district court to "correct an illegal sentence at any time" and to "correct a sentence imposed in an illegal manner" within 120 days of certain triggers. *See* text following Fed. R. Crim. P. 35.

The Sentencing Reform Act deleted these provisions, however, and "the only circumstances in which a sentence could then be reduced were on remand after appeal or upon motion of the government to recognize a defendant's cooperation." 3 Wright, King & Klein, *Federal Practice and Procedure* § 581, at 627 (3d ed. 2004).

Then, in 1991, due in part to a decision of this court recognizing the "inherent power" of a federal court "to correct an acknowledged and obvious" sentencing mistake within the time allowed for filing a notice of appeal, *United States v. Cook*, 890 F.2d 672, 675 (4th Cir. 1989), Rule 35 was amended to include subdivision (c), which provided sentencing courts with a narrow window of seven days within which to correct "arithmetical, technical, or other clear error." Fed. R. Crim. P. 35 advisory committee's note on 1991 amendments; Wright, King & Klein, *supra*, § 585.2, at 646. "The authority to correct a sentence under this subdivision [wa]s intended to be very narrow and to extend only to those cases in which an obvious error or mistake ha[d] occurred . . . ." Fed. R. Crim. P. 35 advisory committee's note on 1991 amendments.

The 1991 version of Rule 35(c), under which Shank moved for relief, provided in full:

> **Correction of Sentence by Sentencing Court.** The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error.

Fed. R. Crim. P. 35(c) (2002).[3]

## III.

Shank argues that "if a defendant timely invokes Rule 35 (i.e., within seven days), the district court is vested with jurisdiction to dispose of that motion," regardless of how long it takes the court to do so. Reply Brief at 1-2. Although there is a certain intuitive logic to this argument, we must reject it for several reasons.

First, the plain language of the rule — "[t]he court, acting within 7 days after the imposition of sentence" — makes clear that the court must act within seven days of sentencing, and that a timely motion by the defendant does not extend this period. Fed. R. Crim. P. 35(c) (2002); *cf.* Fed. R. Crim. P. 35(a) (2004) ("Within 7 days after sentencing, the court may correct a sentence . . . ."). Indeed, although the rule does not bar a motion by a party, it does not contemplate or require one. Rather, it provides that "[t]he *court*, acting within 7 days . . . may correct a sentence . . . ." Fed. R. Crim. P. 35(c) (2002) (emphasis added); *cf.* Fed. R. Crim. P. 35(a) (2004) ("Within 7 days after sentencing, the *court* may correct a sentence . . . .") (emphasis added). The significance of this language becomes even clearer in light of other provisions of Rule 35. *See* Fed. R. Crim. P. 35(b)(1) (2004) ("Upon the government's motion made within one year of sentencing . . . ."); Fed. R. Crim. P. 35(b)(2) (2004) ("Upon the government's motion made more than one year after sentencing . . . ."); Fed. R. Crim. P. 35(b) (2002) ("If the Government so moves within one year after the sentence is imposed . . . ."). In sum, the rule's language makes plain that "whether it acts on its own or on the suggestion or motion of a party, the court may only act within seven days after the

---

[3]The wording of the current rule, which, as explained above, is now at Fed. R. Crim. P. 35(a), differs slightly from the old Rule 35(c):

> **Correcting Clear Error.** Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.

Fed. R. Crim. P. 35(a) (2004). However, "[n]o change in practice is intended" by the slight change in wording in the new rule. *See* Fed. R. Crim. P. 35 advisory committee's note on 2002 amendments.

imposition of sentence." Wright, King & Klein, *supra*, § 585.2, at 649.

In addition, the interplay between Rule 35 and Fed. R. App. P. 4(b) plainly indicates that jurisdiction to correct a sentence for arithmetical, technical, or other clear error under Rule 35 must lapse after seven days. Rule 4(b)(1) provides that "[i]n a criminal case, a defendant's notice of appeal must be filed" within 10 days of "the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1). In this case, therefore, excluding weekends and legal holidays, *see* Fed. R. App. P. 26(a)(2), Shank had until July 12, 2002 to appeal his judgment of conviction.

Rule 4(b) also provides that if a defendant makes one of several enumerated timely motions — for a judgment of acquittal under Rule 29, for a new trial under Rule 33, or for arrest of judgment under Rule 34 — his 10-day appeal period will not begin to run until after the court decides that motion. *See* Fed. R. App. P. 4(b)(3). Notably absent from this list in 2002, when Shank filed his motion, was Rule 35. *See* Fed. R. App. P. 4(b)(3) (2002). The 2002 amendments to the rule clarified that this omission was intentional — for newly amended Rule 4(b) provides: "The filing of a motion under Federal Rule of Criminal Procedure 35(a) does not suspend the time for filing a notice of appeal from a judgment of conviction." Fed. R. App. P. 4(b)(5) (2004).

Thus, the only way that Shank could have preserved his appeal rights would have been to file an appeal from his judgment of conviction by July 12, several days after filing his Rule 35 motion. This conclusion is amply supported by the Advisory Committee Notes, which explain why the period of seven days was chosen. "The Committee contemplates that the court would enter an order correcting the sentence and that such order must be entered within the seven (7) day period so that the appellate process (if a timely appeal is taken) may proceed without delay and without jurisdictional confusion." Fed. R. Crim. P. 35 advisory committee's note on 1991 amendments. The meaning is clear: should a court deny a motion under the seven-day rule, either explicitly or implicitly (by failing to act), a defendant still has ample time in which to appeal his sentence, since such denial will *always* occur before the 10-day appeal period has run.

Finally, we note that the vast majority of our sister circuits have specifically rejected Shank's view, instead holding, as we do, that the rule clearly imposes a seven-day jurisdictional limit. *See*, *e.g.*, *United States v. Wisch*, 275 F.3d 620, 626 (7th Cir. 2001) ("The time limit is jurisdictional, and, furthermore, the motion must be *ruled on* by the district court within seven days, not simply *filed with* the clerk of court during that time.") (citation omitted); *id.* ("[A] court's failure to rule is functionally equivalent to an outright denial on the merits, thus making the judgment final on the date the district judge's power to alter the sentence expired.") (internal quotation marks and citation omitted); *United States v. Austin*, 217 F.3d 595, 598 (8th Cir. 2000) ("The text of Rule 35(c) plainly commands the court to act within seven days, and thus after seven days the motion is effectively denied and any doubt concerning the finality of the sentence is ended."); *United States v. Morrison*, 204 F.3d 1091, 1092 (11th Cir. 2000) (holding that a district court lacks jurisdiction under Rule 35 "to correct a sentence if the court sets the sentence aside within seven days of orally pronouncing it in open court but does not impose a new sentence until more than seven days have passed"); *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1030 (9th Cir. 1999) (adopting view that "a district court's jurisdiction over a Rule 35(c) motion can last no longer than the seven days that the district court has to act on the motion after the imposition of sentence"); *United States v. Blackwell*, 81 F.3d 945, 948 & n.4 (10th Cir. 1996) (noting that Rule 35(c)'s seven-day time limit is jurisdictional); *United States v. Lopez*, 26 F.3d 512, 519 n.8 (5th Cir. 1994) ("We therefore agree . . . that the seven-day limit in Rule 35(c) constitutes a jurisdictional restraint on the district court's power to alter a sentence."); *United States v. Morillo*, 8 F.3d 864, 869 (1st Cir. 1993) ("[I]f a motion is timely made but is not decided within the seven-day period, the judge's power to act under the rule subsides and the pending motion is deemed to be denied as of that date.").[4]

---

[4]Indeed, the 2002 amendments to Fed. R. App. P. 4(b) (discussed in text above) undermine the only two cases arguably adopting Shank's position. *See United States v. Carmouche*, 138 F.3d 1014, 1016 (5th Cir. 1998) (holding that Rule 35(c) motion tolls period for filing appeal); *United States v. Corey*, 999 F.2d 493, 496 (10th Cir. 1993) (same).

It is for these reasons that we conclude that former Rule 35(c), now Rule 35(a), establishes a seven-day jurisdictional limit.

IV.

In this case, the district court effectively denied Shank's Rule 35 motion on July 5, 2002, seven days after sentencing (excluding the intervening weekend and legal holiday), leaving Shank seven more days (including the intervening weekend) to file his notice of appeal.[5] Because Shank did not note his appeal within this period, and because the district court lacked jurisdiction to resolve his Rule 35 motion when it did — five months after he filed that motion — we must dismiss Shank's appeal.[6]

*DISMISSED*

---

[5]Rule 35's seven-day time period for correcting a sentence begins on the day the district court orally pronounces sentence, *United States v. Layman*, 116 F.3d 105, 108 (4th Cir. 1997) — in this case, June 25, 2002. Rule 4(b)'s 10-day time period for filing a notice of appeal begins on the day the judgment is entered on the criminal docket, Fed. R. App. P. 4(b)(6) — in this case, June 27, 2002.

[6]Shank additionally argues that principles of "equitable tolling" apply to save his untimely notice of appeal. He relies on *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), in which the Supreme Court explained that "equitable tolling" can apply to suits "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Shank argues that by setting his Rule 35 motion "for a hearing nearly four months after it was filed, then ruling on that motion as if it had jurisdiction to do so, the district court and Appellee misled Appellant into believing he maintained the opportunity to file a timely notice of appeal from that judgment." Reply Brief at 3-4. This argument is frivolous. *Irwin* provides no authority for application of equitable tolling here. Rather, *Irwin* considered the filing requirement of an inapposite provision of federal law, 42 U.S.C. § 2000e-16(c), and *rejected* the petitioner's claim that this filing requirement had been equitably tolled. Moreover, and just as important, equitable tolling principles cannot, and do not, work to impose responsibility on the district court for Shank's failure to preserve his legal rights.