**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-4406**

───────────

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

KHALIL KENYON BLACKMAN,

             Defendant - Appellant.

───────────

**No. 13-4483**

───────────

UNITED STATES OF AMERICA,

             Plaintiff - Appellant,

        v.

KHALIL KENYON BLACKMAN,

             Defendant - Appellee.

───────────

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.   Leonie M. Brinkema, District Judge. (1:12-cr-00507-LMB-1)

───────────

Argued: January 30, 2014          Decided:  March 21, 2014

───────────

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

───────────

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

———————————

**ARGUED:** Marvin David Miller, LAW OFFICE OF MARVIN D. MILLER, Alexandria, Virginia, for Appellant/Cross-Appellee. Gurney Wingate Grant, II, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Dana J. Boente, Acting United States Attorney, Marc J. Birnbaum, Special Assistant United States Attorney, Karen Ledbetter Taylor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-Appellant.

———————————

WILKINSON, Circuit Judge:

Appellant Khalil Blackman was convicted after a bench trial of two counts stemming from his participation in a series of armed robberies. He now appeals, contending that the evidence was insufficient to support his conviction for brandishing a firearm during and in relation to a crime of violence. The government cross-appeals the district court's denial of its request for forfeiture. For the following reasons, we reject Blackman's arguments and affirm his conviction. We reverse the trial court's forfeiture ruling, however, and remand with directions to enter a forfeiture money judgment pursuant to this decision.

## I.

In early 2011, Avery Bines, James Acker, Michael Sylvester, and defendant Khalil Blackman entered into a conspiracy to commit armed robbery. The target of their scheme was Mark IV Transportation & Logistics, a transportation contractor for the electronics and software developer Apple. Bines acted as the principal organizer of the conspiracy, while Blackman served as the "fence" for the operation -- i.e., the individual responsible for disposing of the stolen goods. The conspirators planned to rob Mark IV in February of that year, and their discussions contemplated the use of a firearm.

At the agreed time, Bines and Blackman situated themselves in Bines's van across the street from the Mark IV warehouse where the targeted truck was scheduled to be loaded. Acker (armed with a gun) and Sylvester approached the Mark IV driver upon his arrival. They forced the driver into his truck at gunpoint before joining him in the vehicle. Acker then placed the gun to the driver's head and compelled him to drive a short distance to a rendezvous point, where they met up with the others. While Acker bound the victim and Sylvester acted as lookout, Bines and Blackman unloaded the stolen products. Blackman later sold the goods and compensated his co-conspirators accordingly.

Following this first successful effort, the conspirators planned to rob a second Mark IV driver that June. As before, their planning sessions contemplated the use of a firearm. On the day of the robbery, Bines, Acker, and Sylvester tailed their target from a Mark IV facility in Maryland to a mall in Virginia. Outside the mall, Sylvester intentionally rammed his vehicle into the Mark IV truck. Acker then detained the driver at gunpoint and commandeered his vehicle. Sylvester drove the truck to a second location where the conspirators unloaded its contents. Once again, Blackman acted as the fence for the stolen goods.

Later that year, the conspirators decided to conduct a heist on a larger scale than their two previous efforts. In preparation, Acker recruited additional participants while Blackman rented a U-Haul truck to transport the significant quantity of goods they intended to steal. Their target was the tractor trailer that transported Apple products to the Mark IV facility. The conspirators -- excluding Blackman but including the additional recruits -- gathered on October 30 at the facility to conduct the robbery. They assaulted the Mark IV driver upon his arrival, striking him with a firearm, before unloading the goods and transporting them to the house of one of Sylvester's friends. Blackman later fenced the stolen products.

As a result of his involvement in these events, Blackman was indicted on two counts. Count One charged him with conspiring to commit robbery, in violation of 18 U.S.C. § 1951(a). Count Two alleged a violation of 18 U.S.C. §§ 924(c) and 2, which prohibit using or carrying a firearm during and in relation to a crime of violence. The indictment also included a forfeiture notice. Blackman was the sole individual tried -- Acker, Bines, and Sylvester had earlier pleaded guilty and agreed to cooperate with the government.

Following a one-day bench trial, the district court convicted Blackman on both counts. The court sentenced him to 120 months in prison -- 36 months for Count One and the

5

mandatory minimum of 84 months for Count Two, to run consecutively. It also imposed concurrent sentences of three and five years of supervised release for the two counts, respectively. Lastly, the court ordered $136,601.03 in restitution, jointly and severally with Blackman's co-conspirators, based on an appraisal of the value of the stolen goods. It rejected, however, the government's request for forfeiture in the same amount. The court later denied the government's motion to amend the sentence to include a forfeiture order. This appeal and cross-appeal followed.

II.

Blackman's primary claim is that the evidence was insufficient to justify his conviction on Count Two, which charged that:

> [Blackman] did knowingly and unlawfully use, carry, and brandish a firearm, during and in relation to a crime of violence . . . , namely the conspiracy to interfere with commerce by robbery . . . as set forth and charged in Count One of the Indictment, which is re-alleged and incorporated by reference here.

Count Two cited both 18 U.S.C. § 924(c), governing firearm use, and 18 U.S.C. § 2, governing aiding and abetting.

Blackman asserts that the district court's reliance on Pinkerton v. United States, 328 U.S. 640 (1946), as a basis of conviction was inappropriate because Pinkerton was not mentioned in the indictment. He claims to have suffered, as a result,

6

unfair surprise at the district court's ruling. Because we find Blackman's conviction appropriate under Pinkerton, we need not address aiding and abetting liability as an alternate basis of conviction.

The Pinkerton doctrine provides that a defendant is "liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." United States v. Dinkins, 691 F.3d 358, 384 (4th Cir. 2012) (quoting United States v. Ashley, 606 F.3d 135, 142-43 (4th Cir. 2010)) (internal quotation marks omitted). "The idea behind the Pinkerton doctrine is that the conspirators are each other's agents; and a principal is bound by the acts of his agents within the scope of the agency." United States v. Aramony, 88 F.3d 1369, 1379 (4th Cir. 1996) (internal quotation marks omitted). In short, "so long as the partnership in crime continues, the partners act for each other in carrying it forward." Pinkerton, 328 U.S. at 646. The law of conspiracy in this respect may seem strict, but it reflects the fact that the combination of criminal capacities often poses a greater risk to society than the actions of a single offender. Moreover, when one reaps the benefits of a collective criminal enterprise, one should be prepared to accept collective consequences.

Contrary to Blackman's argument, this court held in Ashley that the Pinkerton doctrine need not be charged in the

7

indictment, even when it later acts as the legal basis for the defendant's conviction. 606 F.3d at 143. The Ashley court drew an analogy to aiding and abetting liability, which can properly be omitted from an indictment because it "simply describes the way in which a defendant's conduct resulted in the violation of a particular law." Id. The same is true of Pinkerton, which merely represents an alternative form of vicarious liability. Id.; see also United States v. Min, 704 F.3d 314, 324 n.9 (4th Cir. 2013). At their core, both modes of liability rest on "notions of agency and causation." Ashley, 606 F.3d at 143. Ashley found unanimous support for its holding in the precedents of our sister circuits. Id. (collecting cases).

In this case, the prosecution's evidence was plainly sufficient to support Blackman's conviction under Pinkerton for brandishing a firearm during and in relation to a crime of violence in violation of § 924(c). Blackman's co-conspirators testified that he was privy to pre-robbery discussions that included explicit references to the use of a firearm, and that a firearm was actually brandished in the course of each robbery. They also testified that Blackman played a crucial role in the success of the operation, acting as the fence for the stolen goods. The fact that Blackman was not present for each robbery is irrelevant: "a defendant need not be involved in every phase of [a] conspiracy to be deemed a participant." United States v.

8

Leavis, 853 F.2d 215, 218 (4th Cir. 1988). Thus, the evidence clearly demonstrated that Blackman not only joined the alleged conspiracy, but that the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy. See United States v. Jordan, 509 F.3d 191, 202 (4th Cir. 2007).

Despite the holding in Ashley, Blackman nevertheless claims that, on the specific facts of this case, he suffered unfair surprise as a result of his conviction under Pinkerton. This argument is meritless. Count Two explicitly incorporated the Count One conspiracy charge as the "crime of violence" predicate for the § 924(c) violation. The indictment thus put Blackman on notice that his participation in the robbery conspiracy was relevant to the alleged firearm offense. Under these circumstances, "[c]ertainly there could be no danger of unfair surprise." Ashley, 606 F.3d at 144.[1]

---

[1] Blackman also argues that his conspiracy conviction under Count One was unsupported by the evidence. Specifically, he asserts that the trial testimony demonstrated that he actually participated in three separate robbery conspiracies, rather than the single conspiracy alleged in the indictment. We find that the evidence detailing the overlap of actors, methods, and aims in the three robberies was plainly sufficient to support the district court's finding of a single conspiracy. See Leavis, 853 F.2d at 218.

On cross-appeal, the government challenges the district court's denial of forfeiture. The district judge rejected the prosecution's forfeiture request at sentencing without explanation, though it did impose restitution, which has not been challenged on appeal. J.A. 442, 445. Later, at the hearing on the government's motion to correct sentence, the court appeared to base its denial of the motion on the fact that Blackman lacked the assets necessary to satisfy a forfeiture judgment. Id. at 512.[2]

The government's argument is predicated on a sequence of interlocking statutes. Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified

---

[2] The court further expressed doubts regarding whether the government's Federal Rule of Criminal Procedure 35(a) motion to correct sentence was timely filed. Blackman presses a variant of this argument on appeal, contending that the district court failed to rule on the government's 35(a) motion until after the 14-day window had elapsed. These arguments are irrelevant, however, in light of the fact that this appeal concerns the district court's denial of the prosecution's original request for forfeiture -- not the denial of its Rule 35(a) motion. The original request for forfeiture at sentencing was plainly made in a timely fashion. A district court's failure to dispose of a Rule 35(a) motion within 14 days is no bar to this type of ordinary appeal. See United States v. Shank, 395 F.3d 466, 469 (4th Cir. 2005). Moreover, the propriety of forfeiture has been amply discussed both at trial and on appeal, thus eliminating any argument of prejudice that Blackman might make.

unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense," "is subject to forfeiture to the United States." Section 1956(c)(7)(A), in turn, defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title." Section 1961(1) specifies a list of covered offenses, including 18 U.S.C. § 1951, the robbery offense at issue here.

The umbrella forfeiture statute noted above, § 981, generally governs civil forfeiture only. 18 U.S.C. § 981 (titled "Civil forfeiture"). 28 U.S.C. § 2461(c), however, provides that:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in . . . 21 U.S.C. 853[] apply to all stages of a criminal forfeiture proceeding . . . .

Section 2461 thus acts "as a 'bridge' or 'gap-filler' between civil and criminal forfeiture," authorizing "criminal forfeiture when no criminal forfeiture provision applies to the crime charged against a particular defendant but civil forfeiture for

11

that charged crime is nonetheless authorized." United States v. Vampire Nation, 451 F.3d 189, 199 (3d Cir. 2006).

Notably, § 2461(c) (in conjunction with § 981) provides that the district court "shall order" forfeiture in the amount of the criminal proceeds. As the Supreme Court remarked in a related context, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied." United States v. Monsanto, 491 U.S. 600, 607 (1989). "The word 'shall' does not convey discretion. It is not a leeway word, but a word of command." United States v. Fleet, 498 F.3d 1225, 1229 (11th Cir. 2007) (internal quotation marks omitted). The plain text of the statute thus indicates that forfeiture is not a discretionary element of sentencing. Instead, § 2461 mandates that forfeiture be imposed when the relevant prerequisites are satisfied, as they are here. United States v. Newman, 659 F.3d 1235, 1240 (9th Cir. 2011); see also United States v. Torres, 703 F.3d 194, 204 (2d Cir. 2012). Insofar as the district court believed that it could withhold forfeiture on the basis of equitable considerations, its reasoning was in error.

Forfeiture is mandatory even when restitution is also imposed. These two aspects of a defendant's sentence serve distinct purposes: restitution functions to compensate the victim, whereas forfeiture acts to punish the wrongdoer. Newman,

12

659 F.3d at 1241. While our circuit may not have taken up the question explicitly, see United States v. Alalade, 204 F.3d 536, 537 (4th Cir. 2000) (affirming the imposition of both forfeiture and restitution), at least "[e]ight other Circuits to have considered orders of forfeiture and restitution in the face of 'double recovery,' due process-type challenges have affirmed their concurrent imposition." Torres, 703 F.3d at 204 (collecting cases). "Because restitution and forfeiture are distinct remedies, ordering both in the same or similar amounts does not generally amount to a double recovery." United States v. McGinty, 610 F.3d 1242, 1247 (10th Cir. 2010).

Furthermore, the two remedies need not be at cross-purposes. Although it is not bound to do so, the government has the discretion to use forfeited assets to restore a victim whom the defendant has failed to compensate. Torres, 703 F.3d at 204-05. The government's ability to collect on a judgment often far surpasses that of an untutored or impecunious victim of crime. Both the government and Blackman acknowledge that the Marshals Service has established a program specifically for the purpose of executing forfeiture judgments. Appellant's Reply Br. at 29-30; Appellee's Br. at 33-34. Realistically, a victim's hope of getting paid may rest on the government's superior ability to collect and liquidate a defendant's assets.

13

The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order. Forfeiture is calculated on the basis of the total proceeds of a crime, not the percentage of those proceeds remaining in the defendant's possession at the time of the sentencing hearing. United States v. Hampton, 732 F.3d 687, 692 (6th Cir. 2013); see also United States v. Amend, 791 F.2d 1120, 1127 n.6 (4th Cir. 1986) ("[T]he government need not have offered evidence that the forfeitable assets were still in existence at the time of [defendant's] conviction."). This rule -- which has been embraced "by a unanimous and growing consensus among the circuits," Hampton, 732 F.3d at 691 -- is grounded in basic logic. To conclude otherwise would enable wrongdoers to avoid forfeiture merely by spending their illegitimate gains prior to sentencing. Vampire Nation, 451 F.3d at 202. But a robber "who dissipates the profits or proceeds" of his crimes for fleeting purposes "has profited from [robbery] to the same extent as if he had put the money in his bank account." United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (quoting United States v. Ginsburg, 773 F.2d 798, 802 (7th Cir. 1985)) (internal quotation marks omitted). Imposing forfeiture on defendants who have divested themselves of their gains is therefore necessary to give full

effect to the penal purposes of the forfeiture statute. Newman, 659 F.3d at 1243.

Blackman contends that a forfeiture order in this case would violate the Eighth Amendment, which bars the government from collecting excessive fines as punishment for an offense. Where no final forfeiture order or judgment has been entered, ruling on such a question would be premature. See United States v. Talebnejad, 460 F.3d 563, 573 (4th Cir. 2006). Where, however, a forfeiture judgment in a particular amount is directed -- as in this case, see infra -- a defendant's Eighth Amendment claim is ripe.

Under United States v. Bajakajian, "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." 524 U.S. 321, 334 (1998). Our court has distilled this standard to four factors: (1) "the amount of the forfeiture and its relationship to the authorized penalty;" (2) "the nature and extent of the criminal activity;" (3) "the relationship between the crime charged and other crimes;" and (4) "the harm caused by the charged crime." United States v. Jalaram, 599 F.3d 347, 355-56 (4th Cir. 2010). Because questions of proportionality are reserved primarily to the legislature, the Bajakajian test is highly deferential. United States ex rel. Bunk v. Gosselin World Wide Moving, N.V., Nos. 12-1369, 12-1417, 12-1494, slip op. at

15

13 (4th Cir. Dec. 19, 2013); see also Bajakajian, 524 U.S. at 336.

Blackman's claim fails to satisfy the Jalaram criteria. The maximum statutory fine for the robbery offense in Count One is $250,000 -- a sum far exceeding the requested forfeiture. 18 U.S.C. § 3571(b)(3). As the PSR notes, the Guidelines maximum is $150,000, indicating a substantial level of culpability. J.A. 567; see Bajakajian, 524 U.S. at 338-39. Blackman did not play a minor role in the conspiracy; instead, as a fence, he served the crucial function of enabling the conspiracy to dispose of its loot both profitably and discreetly. He also participated in the commission of the first robbery and the planning of all three, over a period of several months. See United States v. Ahmad, 213 F.3d 805, 818 (4th Cir. 2000). In short, this is not a case in which a trivial player in a vast conspiracy is held responsible for proceeds far out of proportion to the scope of his involvement. See Jalaram, 599 F.3d at 355. Furthermore, the crime caused significant concrete harm, depriving Apple of its wares and potential profits in addition to damaging Mark IV's business. The robberies also subjected the immediate victims to intense distress and inflicted the type of diffuse social harm characteristic of all serious crimes. Given these circumstances, the imposition of a forfeiture order in the amount of $136,601.03 poses no Eighth Amendment problem.

16

In sum, the district court's forfeiture ruling was unsupported by any relevant legal authority. On remand, the court should enter a forfeiture order in the amount of $136,601.03, the value of the stolen goods. Blackman is liable for the reasonably foreseeable criminal proceeds of the conspiracy. United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996) ("Just as conspirators are substantively liable for the foreseeable criminal conduct of a conspiracy's other members, . . . they are responsible at sentencing for co-conspirators' reasonably foreseeable acts and omissions . . . in furtherance of the jointly undertaken criminal activity.") (internal quotation marks omitted). In the proceedings below, Blackman offered only a conclusory response to the government's declaration that the minimum value of the proceeds was $136,601.03, an amount which was generally corroborated by the trial testimony of an Apple loss prevention manager. The district court at sentencing imposed restitution of $136,601.03 without objection. On appeal, Blackman contests the court's ability to impose forfeiture at all -- not the specific sum proposed by the government, which, in any event, is well below the maximum statutory fine of $250,000. At no point has Blackman suggested an alternative figure.

Nor is the form of the government's forfeiture judgment at issue. It is well settled that nothing in the applicable

17

forfeiture statutes "suggests that money judgments are forbidden." Hampton, 732 F.3d at 691-92; see also United States v. Olguin, 643 F.3d 384, 397 (5th Cir. 2011) (collecting cases holding that money judgments are proper in the forfeiture context). Such judgments would seem especially appropriate where physical assets derived from the conspiracy are no longer traceable or available. See, e.g., United States v. Day, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008).

IV.

For the foregoing reasons, we affirm Blackman's conviction but reverse the district court's forfeiture ruling and remand with directions for it to enter a forfeiture money judgment in the amount of $136,601.03.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED