**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4417

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALAN L. BUTLER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:12-cr-00192-HEH-1)

Argued: May 15, 2014                    Decided: July 3, 2014

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Gregory and Judge Agee joined.

**ARGUED:** William H. Burgess, IV, KIRKLAND & ELLIS, LLP, Washington, D.C., for Appellant. Jamie L. Mickelson, OFFICE OF THE UNITED STATES ATTORNEY, Atlanta, Georgia, for Appellee. **ON BRIEF:** Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Gurney Wingate Grant II, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Alan L. Butler pleaded guilty to conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, based on his conduct of awarding construction contracts in the name of his employer to companies in which Butler had an ownership interest. On appeal, Butler argues that the district court overstated the loss to his employer resulting from the fraud by failing to award a setoff for the value of Butler's personal labor. Based on this assigned error, Butler challenges the court's application of a 14-level sentencing enhancement related to loss, as well as the court's forfeiture order in the amount of $864,914.61.

Upon our review, we conclude that the district court did not err in calculating the loss amount on which the sentencing enhancement and the forfeiture order were based, because any labor performed by Butler during the scheme did not provide legitimate value to his employer. Accordingly, we affirm the district court's judgment.

I.

From 2002 through 2011, Butler worked as the vice president and director of construction for CH Construction, LLC (CHC), a Virginia corporation that developed residential real estate in Virginia and North Carolina. In his position with CHC, Butler was responsible for managing CHC's construction projects,

2

adhering to established budgets, obtaining bids from subcontractors, and selecting and overseeing subcontractors.

In 2004, Butler and his co-conspirator formed a business in Virginia known as Valley Construction Corps (Valley). In 2011, Butler formed another business in Virginia known as ACT Resources and Remediation, LLC (ACT). Between 2004 and 2011, Butler, on behalf of CHC, entered into contracts with Valley and ACT for the performance of exterior stonework and other construction-related work. During this time, Butler concealed from CHC and its owner, Roger Glover, Butler's ownership of Valley and ACT. Butler also concealed from CHC the fact that Valley and ACT had hired other subcontractors to complete the work for CHC. By charging CHC a higher price for the work than Valley and ACT paid to the subcontractors who performed the work, Butler profited personally from these arrangements.

In December 2012, a grand jury returned a one-count indictment against Butler charging him with conspiracy to commit mail fraud.[1] The indictment also included a forfeiture

---

[1] The mail fraud statute, 18 U.S.C. § 1341, prohibits conduct that, through use of the mail, entails a scheme to defraud, or to obtain "money or property by means of false or fraudulent pretenses, representations, or promises." We have set forth the elements of mail fraud as "(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme." United States v. Vinyard, 266 F.3d 320, 326 (4th Cir. 2001) (citation omitted).

allegation. In January 2013, the district court accepted Butler's guilty plea and entered a judgment of conviction.

The probation officer who prepared Butler's presentence report (PSR) calculated a total offense level of 20, which included a 14-level enhancement based on a loss to CHC in an amount exceeding $800,000. The enhancement was applied in accordance with United States Sentencing Guidelines (U.S.S.G.) § 2B1.1(b)(1)(H), which governs fraud offenses resulting in monetary losses to the victim in amounts between $400,000 and $1,000,000. As a result of this enhancement, the probation officer recommended an advisory Guidelines range of 33 to 41 months' imprisonment.

Butler objected to the recommended enhancement and argued that the asserted loss amount failed to include a credit for the labor that he personally performed on behalf of Valley and ACT. In response, the government contended that CHC's pecuniary loss was $864,914.61, which amount represented the difference between CHC's payments to Valley and ACT and the money that those businesses paid to the subcontractors actually performing the work.

At a sentencing hearing, the district court received testimony from several witnesses, including Butler. The government presented the testimony of Special Agent David Hulser, a certified public accountant for the Federal Bureau of

4

Investigation who participated in the investigation of the case. During this investigation, Hulser reviewed Butler's personal bank statements and tax records, as well as the statements and records of Valley and ACT.

After examining these documents, Hulser determined that Valley and ACT received a total of more than $1.6 million from CHC. Hulser also calculated that Valley and ACT had expended a total of about $775,000 for labor performed by subcontractors. By subtracting these costs from CHC's total payments to Valley and ACT, Hulser concluded that Butler, through Valley and ACT, had "overbilled" CHC by $864,914.61.

The government also presented the testimony of CHC's owner, Roger Glover. He testified that after Butler's fraud was discovered, CHC continued to do business directly with Environmental StoneWorks (ESW), one of the same subcontractors hired by Valley to perform certain stonework. Glover stated that ESW performed the same work that CHC previously had hired Valley to perform, at roughly one-third the amount that Valley had charged to CHC. A representative of ESW corroborated this testimony, and also stated that ESW charged about the same price for its work performed directly for CHC as the price it charged to Valley.

Butler testified that, generally, the prices charged by Valley and ACT to CHC were equal to, or less than, the estimates

5

submitted by other bidding companies. He also stated that when he formed Valley, he intended not only to profit personally, but also to provide a benefit to CHC by providing quality work that eventually would result in improved sales.

Butler also submitted as evidence a report prepared by a construction consultant, who did not testify at the hearing. In the consultant's report, which was based on information provided by Butler, the consultant analyzed the fair market value of Valley's work for CHC, and calculated the value of Butler's "unbilled" labor and other expenses relating to his work on Valley's projects for CHC. The consultant concluded that the overall price that CHC paid Valley over eight years was $55,243.89 below the fair market value of the work that was performed on CHC's behalf.

At the conclusion of the sentencing hearing, the district court overruled Butler's objection to the loss amount stated in the PSR, and applied the 14-level enhancement. The court sentenced Butler to serve a term of 36 months' imprisonment, and ordered him to pay restitution in the amount of $864,914.61.

Several days later, the court held a hearing on the government's motion seeking an order of forfeiture. At the hearing, Butler argued that a portion of his labor and certain out-of-pocket expenses qualified as "direct costs" that should reduce the total amount attributable to the fraud by

6

$339,246.57. The court declined to offset this requested amount, but credited Butler for certain documented expenses that the government already had factored into its loss and forfeiture calculations. The court entered a final order of forfeiture in the amount of $864,914.61, which amount the court found represented the "net proceeds" fraudulently obtained by Butler. Butler timely filed this appeal.

## II.

On appeal, Butler asserts that the court erred in applying the 14-level sentencing enhancement, and in entering the forfeiture order in the amount of $864,914.61.[2] Butler does not dispute that the district court's calculations of loss and forfeiture amounts accurately represented the difference between

---

[2] In his brief, Butler also argues that the court's order of restitution was based on an erroneous loss calculation. However, Butler's argument lacks merit because it fails to address the statutes governing restitution in this case, which require a court to order that a defendant "make restitution to the victim of the offense" in the "full amount" of the victim's losses. 18 U.S.C. §§ 3663A(a)(1), 3664(f)(1)(A). Unlike the Guidelines and the forfeiture statute relied on by Butler, these restitution statutes do not contain a particular provision allowing a court to award a setoff in calculating the amount of restitution owed. Nevertheless, to the extent that Butler is challenging the court's restitution order, we conclude for the reasons stated more fully in this opinion that the district court did not abuse its discretion in awarding restitution in the amount of $864,914.61. See United States v. Llamas, 599 F.3d 381, 387 (4th Cir. 2010).

CHC's payments to Valley and ACT and their payments to subcontractors. Instead, Butler contends that his personal labor provided legitimate value to CHC warranting a setoff in both the calculated loss amount and the forfeiture amount. We disagree with Butler's argument.

Initially, we observe that Butler relies on two distinct setoff provisions described below, one relating to a sentencing enhancement involving loss amount and one applicable to forfeiture. Nonetheless, Butler's argument presents the single analytical question whether his alleged "unbilled" labor provided legitimate value to CHC, thereby requiring a reduction in the court's calculation of loss and forfeiture amounts.

We review for clear error the district court's factual findings relating to these calculations. United States v. Vinyard, 266 F.3d 320, 332 (4th Cir. 2001) (reviewing district court's loss determination under the Guidelines for clear error); United States v. Oregon, 671 F.3d 484, 490 (4th Cir. 2012) (reviewing, in criminal forfeiture context, a court's findings of fact for clear error). We examine de novo the district court's legal interpretation of the Sentencing Guidelines and the forfeiture statute. See United States v. Steffen, 741 F.3d 411, 414 (4th Cir. 2013); Oregon, 671 F.3d at 490.

8

When calculating a loss amount for purposes of a sentencing enhancement, a district court is required to make a "reasonable estimate" of the loss amount sustained by the fraud victim based on the evidence presented. U.S.S.G. § 2B1.1 cmt. n.3 (C). In accordance with this provision, the court's estimate of loss amount must include a reduction for the value of any property or collateral returned to the victim, or the value of services rendered to the victim. U.S.S.G. § 2B1.1 cmt. n.3 (E)(i).

In determining a forfeiture amount, a district court first must find that there is a sufficient nexus between the forfeiture calculation and the crime. United States v. Martin, 662 F.3d 301, 307 (4th Cir. 2011) (citing Fed. R. Crim. P. 32.2(b)(1)(A)). Under 18 U.S.C. § 981(a)(1)(C), property is subject to forfeiture when the property is "derived from proceeds traceable" to the criminal offense. When a "case[] involv[es] . . . lawful services" that are "provided in an illegal manner," proceeds subject to forfeiture should be offset by the "direct costs incurred in providing the goods or services," thereby yielding "net proceeds." 18 U.S.C. § 981(a)(2)(B).

In the present case, the district court engaged in the same analysis for calculating both the loss amount and the forfeiture amount. That calculation was based on the total amount that CHC

9

paid to Valley and ACT, minus the cost of the legitimate work performed by their subcontractors.

Although the district court assumed, without deciding, that Butler performed the labor he claimed, the court declined to allow a further reduction for that labor. The court held that Butler's labor was part of the fraud scheme and, therefore, did not represent "legitimate" value received by CHC. We agree with the court's conclusion.

The essential components of Butler's seven-year fraud scheme during his employment with CHC were his acts concealing his ownership of Valley and ACT, and his conduct concealing his involvement with the contracts awarded to those companies. Butler admitted that he took "significant steps" to hide from CHC and Glover his ownership interest in Valley and ACT, including his action of obtaining false signatures on contracts that his companies executed with CHC. Without concealing his active participation in Valley and ACT, Butler could not have executed the fraud scheme.

As the district court recognized, the work performed by the third party subcontractors at the direction of Valley and ACT unquestionably provided legitimate value to CHC. Those subcontractors performed construction work at market value without any knowledge of, or involvement in, Butler's scheme. In contrast, all the work that Butler performed was done with

the purpose of increasing the benefit he received from performance of the fraudulent contracts.

Although Butler's "unbilled" labor did not involve the performance of services that were unlawful per se, we must consider the value of that labor within the context of its purpose in furthering Butler's criminal enterprise. Because Butler performed this labor to facilitate completion of the fraudulent contracts, and to perpetuate a scheme that required concealment of his interest in Valley and ACT, his labor necessarily constituted "unlawful services" and did not provide CHC any legitimate value.[3]

Under these circumstances, Butler was not entitled to a credit for any value of his labor, which was an essential component of the fraud scheme. See generally United States v. Hartstein, 500 F.3d 790, 800 (8th Cir. 2007) (sentencing court may refuse to credit defendant's repayments when they relate solely to the illegal purpose of continuing the scheme); United States v. Ciccone, 219 F.3d 1078, 1087 (9th Cir. 2000) (court

---

[3] The district court found on other grounds that any labor performed by Butler did not provide legitimate value to CHC. The court framed its analysis, in part, on its finding that Butler's employment with CHC required him to perform labor relating to Valley and ACT's subcontracts. However, we are "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." United States v. McHan, 386 F.3d 620, 623 (4th Cir. 2004) (citation and internal quotation marks omitted).

11

need not credit a defendant for services that permitted the fraudulent scheme to continue). Thus, the district court properly refused Butler's request that effectively would have rewarded him further for his criminal conduct. We therefore hold that the district court did not err in denying Butler's claim for a setoff from the loss amount and a reduction in the award of forfeiture, based on the "fair market value" of any services that he rendered. Accordingly, the court likewise did not err by applying the sentencing enhancement and in entering an order of forfeiture in the amount of $864,914.61.[4]

## III.

For these reasons, we affirm Butler's sentence and the district court's forfeiture judgment.

AFFIRMED

---

[4] In his brief, Butler challenges the district court's authority to enter a forfeiture money judgment in a criminal case. However, before oral argument in the present case, we issued our decision in United States v. Blackman, 746 F.3d 137, 144 (4th Cir. 2014), in which we concluded that forfeiture money judgments in criminal cases are not only permissible but are required when the defendant has spent or divested himself (to the exclusion of the victim) of the gains at issue. Accordingly, as later acknowledged by Butler during oral argument, Butler's contention is foreclosed by our decision in Blackman.